UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KEITH WAYNE SEKERKE, CDCR #V-15331,<br><br>         Plaintiff,<br><br>vs.<br><br>V. KEMP, Correctional Officer; A. ANDERSEN, Correctional Officer; A. LAROCCO, Correctional Officer; J. LUNA, Correctional Officer; C. CRESPO, Correctional Officer; J. McGEE, Correctional Officer; G. SAVALA, Correctional; Lieutenant; E. GARCIA, Correctional Captain,<br><br>         Defendants. | Civil No. 11cv2688 BTM (JMA)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS PURSUANT TO FED.R.CIV.P. 12(b)(6)**<br><br>**(ECF Doc. No. 14)** |

  In this case, Keith Wayne Sekerke ("Plaintiff"), a prisoner currently incarcerated at the California Correctional Institution in Tehachapi, is proceeding in pro se and *in forma pauperis* pursuant to 28 U.S.C. § 1915(a) and the Civil Rights Act, 42 U.S.C. § 1983.

  In his Complaint, Plaintiff alleges Defendants, all California Department of Corrections and Rehabilitation ("CDCR") officials at Richard J. Donovan Correctional Facility ("RJD"), violated his Eighth and Fourteenth Amendment rights on April 1, 2011 by using excessive force against him, failing to adequately treat his pepper spray exposure, and fabricating incident

reports afterwards in order to justify a prison disciplinary conviction against him for assault on a peace officer. (Compl. at 4-7.) Plaintiff further alleges Defendants conspired against him in violation of 42 U.S.C. § 1985 and § 1986. (*Id.* at 8.)

Defendants have filed Motion to Dismiss pursuant to FED.R.CIV.P. 12(b)(6) (ECF No. 14). Plaintiff has filed a Response in Opposition (ECF No. 15), to which Defendants have filed a Reply (ECF No. 17). In addition, the Court permitted Plaintiff to file a Sur-Reply (ECF No. 20). The Court has determined the matter is suitable for submission on the papers, and has held no oral argument. *See* S.D. CAL. CIVLR 7.1(d)(1).

**I.     Factual Allegations**

Plaintiff divides his Complaint into three separate counts, each arising on, or as the result of, an incident which occurred at RJD on April 1, 2011. (Compl. at 1, 4, 7, 8.)

In "Count 1," Plaintiff claims his Eighth Amendment rights were violated on that day when, after he left his cell to go the yard, several fellow inmates informed him that Defendant Correctional Officers Larocco and Crespo were "trashing [his] cell because [his] cell mate went to yard wearing unauthorized clothing and would not cooperate by turning it in." (*Id.* at 4.) Plaintiff claims he "tried to talk to them to ask them not to punish [him] for what [his] celly ha[d] done," but Defendant Andersen, another Correctional Officer, "warded [him] off [by] threatening [him] with pepper spray." (*Id.*) Plaintiff then complained to Defendant Luna, a Sergeant, but "he would not help or intervene." (*Id.*)

Plaintiff then admits he "planned to make a point in return by going into their office and trashing it." (*Id.*) So, "after yard recall, [Plaintiff] ran into their office, shut the door," and blocked it with his foot while he "reached out and threw everything on the desk to the floor." (*Id.*) Plaintiff then alleges to have removed his foot from the door and "got on [his] stomach with [his] hands behind [his] back on the floor." (*Id.*) Plaintiff claims "the whole reason [he] blocked the door was to insure that no physical violence occurred," and that he "had no intentions whatsoever at any type of physical violence." (*Id.*) Instead, Plaintiff claims he "only wanted to do what they did to [him]" and he "figured as long as [he] got down, no violence would occur." (*Id.* at 4-5.)

Plaintiff now "regret[s] that error in judgment," and claims the actions which followed violated his Eighth Amendment rights because Defendants responded in an "unjust, unwarranted, malicious, sadistic, cruel and deliberate" way. (*Id.* at 5.) Specifically, Plaintiff claims Defendants Kemp and Andersen entered the office, and Kemp "put his right elbow onto [his] back and began punching [him] in [his] left ribs with his left hand." (*Id.*) Kemp then "got back up and out of the way while C[orrectional] O[fficer] Andersen at point blank range sprayed [Plaintiff] with ... O.C. pepper spray in the face and body." (*Id.*) "Then, [] Kemp started beating [him] with his expandable baton." (*Id.*) Defendant Crespo "stood and held the door open while all this happened." (*Id.*)

Plaintiff then claims he was "dragged out by [his] feet." (*Id.*) Defendants McGee and Larocco arrived, and escorted him "out of the building to the holding cages outside." (*Id.*) During the escort, Plaintiff claims to have asked Defendant McGee "if he would please take [Plaintiff] to a shower so [he] could wash off the O.C. pepper spray." Plaintiff admits he was permitted to rinse his eyes in a drinking fountain, "but it didn't help." (*Id.*)

Once he was placed in a holding cage, Plaintiff claims Defendant Larocco "had [him] strip naked and conducted a naked strip search outside in full view of several female staff." (*Id.* at 5-6.) "Several hours later," Plaintiff claims Larocco took him to Ad-Seg, and Plaintiff "asked again to be allowed to shower," but Larocco "wouldn't let [him]." (*Id.* at 6.) Plaintiff alleges he was not permitted to shower until April 4, 2011, and to have suffered four days of "burning on [his] skin, face, hands, arms and body" due to his O.C. exposure. (*Id.*)

In "Count 2," Plaintiff alleges his "Fourteenth Amendment due process" rights were violated when Defendants Andersen, Crespo, Kemp, McGee, and Larocco "fabricated stories and ... their [incident] reports" following the April 1, 2011 incident. (*Id.* at 7.)[1] Specifically,

---

[1] Plaintiff attached no CDCR Form 837-C Staff Report authored by Defendant Larocco; however it appears Defendant Larocco participated in Plaintiff's disciplinary proceedings insofar as he was assigned as Plaintiff's Investigative Employee ("IE") pursuant to CAL. CODE REGS., tit. 15 § 3315(d)(1)(A). (Compl. at 47, 68-69.) As part of those duties, Larocco acted as a "fact finder for the Senior Hearing Officer (G. Savala)" and his "function was to gather pertinent information, question staff and/or inmates, and submit a written report." (*Id.* at 68.) Larocco's Report (CDC Form CDC 115A) is also attached as an Exhibit to Plaintiff's Complaint. (*Id.* at 68-69.) Larocco's CDC Form 115A includes statements from Plaintiff and inmate Swan, as well as statements from Defendants Andersen, Kemp, and McGee. Defendant Kemp stated: "[Plaintiff] ran right in to the office and started destroying everything

1  Plaintiff refers to his own Exhibit D, which is a CDCR Form 837-A, Crime Incident Report Log
2  No. RJD-210-11-04-0166, completed by Correctional Lieutenant Ortiz, (*id.* at 20-25), and
3  supplemented by CDCR Form 837-C Staff Reports filed by Defendants Andersen (*id.* at 26-27),
4  Crespo (*id.* at 29), Kemp (*id.* at 30-31), and McGee. (*Id.* at 34.) Plaintiff contends these report
5  are "fabricated" insofar as they report he "sw[u]ng [his] fists [or] kick[ed] at anyone," (*id.* at
6  7), because he was "on [hi]s stomach with [his] hands behind [his] back on the floor," at the time
7  Defendants Kemp and Andersen entered the office. (*Id.* at 4.) In support, Plaintiff points to his
8  own Exhibit E, which includes a copy of CDC 115 Rules Violation Report Log No. F2-11-093,
9  charging him with assault on a peace officer in violation of CAL. CODE REGS., tit. 15
10 § 3005(d)(1). (*Id.* at 46.) During his disciplinary hearing, another inmate named Swan testified
11 that Plaintiff "got down into a prone position *before* staff entered the office and did not swing
12 or kick at staff." (*Id.* at 47) (emphasis added). Nevertheless, Plaintiff claims he was found
13 guilty of assault on a peace officer, referred to ICC for program review and a SHU term
14 consideration, and assessed a 61 loss of behavioral credit based on "false allegations and
15 fabricated reports." (*Id.* at 7, 48.)

16      In "Count 3," Plaintiff alleges Defendants Andersen, Crespo, Kemp, McGee, and Larocco
17 "all conspired and fabricated [their] reports charging [him] with false charges" in order to
18 "obstruct the due course of justice" pursuant to 42 U.S.C. § 1985. (Compl. at 7-8.) Plaintiff
19 further contends Defendants Savala, Luna and Garcia "had knowledge of the conspiracies and
20 did not do anything about it," and thus, are liable under 42 U.S.C. § 1986. (*Id.* at 8.)
21 / / /

---

he could. We had to push ou[r] way in as [Plaintiff] resisted by punching and kicking violently. It took physical force, OC and baton strikes to get him under control." (*Id.* at 68.) Defendant Andersen testified similarly, stating Plaintiff "attempted to keep [them] out of the office as long as possible," that [h]e destroyed everything he could reach," and adding Plaintiff "complied to no verbal orders," thus, "it was necessary to use physical, chemical and baton strikes to control him." (*Id.*) Defendant McGee testified that he "did not witness the actual incident or use force. [He] merely escorted [Plaintiff] for decontamination and medical evaluation." (*Id.*) Finally, inmate Swan testified Plaintiff "told [him] earlier he was going to do it," "said he did it before in H/U 9," and that he was "going to go in the office and trash it, and get down when the alarm went off, he did." (*Id.*) Larocco's IE Report further notes that some staff members Plaintiff requested be interviewed were not because "none were present at the incident," and that all his questions for Defendants Kemp, McGee, Andersen, Luna and another Correctional Officer named Baker were "answered by reports in 837 Crime/Incident Report RJD-210-11-04-0166." (*Id.* at 69.)

Plaintiff requests relief in the form of $200,000 in general and punitive damages, as well as a permanent injunction appointing a "federally employed / appointed supervisor" who "is not answerable to the State to insure ... inmates' constitutional rights are protected," the installation of "surveillance cameras at all areas of the institutions recording at all times," a "full RICO investigation into CDCR's custody staff," and modifications to CDCR regulations prohibiting "strip[] searche[s] in view of the opposite sex," governing the use of O.C. pepper spray, and requiring "adequate" decontamination protocols. (*Id.* at 10-11.)

## II. Defendants' Motion to Dismiss

Defendants seek dismissal pursuant to FED. R.CIV.P. 12(b)(6) on grounds that Plaintiff's excessive force allegations against Defendants Kemp, Andersen, and Crespo are barred by *Heck v. Humphrey*, 512 U.S. 477 (1994), he has failed to state any Eighth Amendment claim as to Defendants McGee and Larocco, he has failed to state a "due process claim for falsified disciplinary reports," and his allegations of conspiracy are "vague" and "lack factual support." *See* Defs.' Mem. of P&As in Supp. of Mot. to Dismiss (ECF No. 14-1) (hereafter "Defs.' P&As") at 3-7.

### A. FED.R.CIV.P. 12(b)(6) Standard of Review

A Rule 12(b)(6) dismissal may be based on either a "'lack of a cognizable legal theory' or 'the absence of sufficient facts alleged under a cognizable legal theory.'" *Johnson v. Riverside Healthcare System, LP*, 534 F.3d 1116, 1121-22 (9th Cir. 2008) (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990)). In other words, the plaintiff's complaint must provide a "short and plain statement of the claim showing that [he] is entitled to relief." *Id.* (citing FED.R.CIV.P. 8(a)(2)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 679 (citing *Twombly*, 550 U.S. at 556).

1  The court need not, however, accept as true allegations that are conclusory, legal
2 conclusions, unwarranted deductions of fact or unreasonable inferences. *See Sprewell v. Golden*
3 *State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001); *Iqbal,* 556 U.S. at 678 ("Threadbare recitals
4 of the elements of a cause of action, supported by mere conclusory statements, do not suffice.");
5 *Twombly*, 550 U.S. at 555 (on motion to dismiss court is "not bound to accept as true a legal
6 conclusion couched as a factual allegation."). "The pleading standard Rule 8 announces does
7 not require 'detailed factual allegations,' but it demands more than an unadorned, the defendant-
8 unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (citations omitted).

9  Nevertheless, claims asserted by pro se petitioners, "however inartfully pleaded," are held
10 "to less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404
11 U.S. 519-20 (1972).  Thus, courts "continue to construe pro se filings liberally when evaluating
12 them under *Iqbal*." *Hebbe v. Pliler*, 627 F.3d 338, 342 & n.7 (9th Cir. 2010) (citing *Bretz v.*
13 *Kelman*, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985) (noting that courts "have an obligation where
14 the petitioner is *pro se*, particularly in civil rights cases, to construe the pleadings liberally and
15 to afford the petitioner the benefit of any doubt.")).

16  In addition, when resolving a motion to dismiss for failure to state a claim, the court may
17 not generally consider materials outside the pleadings, except for exhibits which are attached.
18 *See* FED.R.CIV.P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part
19 of the pleading for all purposes."); *Schneider v. California Dept. of Corrections*, 151 F.3d 1194,
20 1197 n.1 (9th Cir. 1998); *Jacobellis v. State Farm Fire & Casualty Co.*, 120 F.3d 171, 172 (9th
21 Cir. 1997); *Allarcom Pay Television Ltd. v. General Instrument Corp.*, 69 F.3d 381, 385 (9th Cir.
22 1995). "The focus of any Rule 12(b)(6) dismissal ... is the complaint." *Schneider*, 151 F.3d at
23 1197 n.1.

24  **B.  *Heck* Bar**

25  Defendants first argue Plaintiff's "excessive force claim against Defendants Kemp,
26 Andersen, and Crespo" in Count 1 is barred by *Heck v. Humphrey*, 512 U.S. 477 (1994), because
27 a judgment in his favor would "necessarily imply the invalidity" of his disciplinary conviction
28 for assault on a peace officer in violation of CAL. CODE REGS., tit. 15 § 3005(d)(1).  *See* Defs.'

P&As at 3-4. In his Opposition, Plaintiff claims *Heck* is inapplicable because the good-time credits he lost as the result of his disciplinary conviction were restored. *See* Pl.'s Opp'n at 4, 11. In their Reply, Defendants argue the Court may not look to new allegations or exhibits offered in opposition to a Rule 12(b)(6) Motion, and that even if Plaintiff's credits were restored, that "does not mean that the underlying conviction was overturned," because CAL. CODE REGS., tit. 15 § 3327 permits restoration of forfeited credits if inmates remain disciplinary-free for a specified period after their disciplinary conviction. (Defs.' Reply at 2.) Thus, Defendants argue the restoration of Plaintiff's credits does not by itself show, as he must to satisfy *Heck*'s favorable termination requirement, that they were restored because his disciplinary conviction for battery on a peace officer was overturned. (*Id.*) In fact, the Director's Level Appeal of Plaintiff's CDC 115 disciplinary conviction, which Plaintiff also attached to his Complaint, indicates that his administrative appeals were denied and that "[n]o changes or modifications [were] required." (Compl. at 38.)

Regardless of the status of Plaintiff's credit restoration however, this Court finds that Plaintiff's excessive force claims are *not Heck*-barred. "[A] state prisoner cannot use a § 1983 action to challenge the 'fact or duration of his confinement,' because such an action lies at the 'core of habeas corpus.'" *Simpson v. Thomas*, 528 F.3d 685, 693 (9th Cir. 2008) (quoting *Preiser v. Rodriguez*, 411 U.S. 475, 489 (1973)). Thus, where a § 1983 action seeking damages alleges constitutional violations that would necessarily imply the invalidity of a conviction or sentence, the prisoner must first establish that the underlying sentence or conviction has already been invalided on appeal, by a habeas petition, or terminated in his favor via some other similar proceeding. *Heck*, 512 U.S. at 483–87. This "favorable termination" rule applies to prison disciplinary proceedings, if those proceedings resulted in the loss of good-time or behavior credits. *Edwards v. Balisok*, 520 U.S. 641, 646–48 (1997) (holding that claim for monetary and declaratory relief challenging validity of procedures used to deprive prisoner of good-time credits is not cognizable under § 1983); *see also Wilkinson v. Dotson*, 544 U.S. 74, 81–82 (2005) (explaining that "a state prisoner's § 1983 action is barred (absent prior invalidation) no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state

conduct leading to conviction or internal prison proceedings) if success in that action would necessarily demonstrate the invalidity of confinement or its duration.") (emphasis omitted). Stated another way, a § 1983 claim is barred if the "plaintiff could prevail only by negating 'an element of the offense of which he has been convicted.'" *Cunningham v. Gates*, 312 F.3d 1148, 1153-54 (9th Cir. 2002) (citing *Heck*, 512 U.S. at 487 n.6). However, when the § 1983 claim does not necessarily implicate the underlying disciplinary action (or criminal conviction), it may proceed. *See Muhammed v. Close*, 540 U.S. 749, 754-55 (2004).

Plaintiff alleges Defendants Andersen, Crespo, Kemp, McGee and Larocco made "false allegations" and prepared "fabricated reports" that he was resistant after trashing their office on April 1, 2011. (Compl. at 7.) Plaintiff further claims he was "subjected to a SHU term" and lost custody credits as a result of his disciplinary conviction for assault on a peace officer in violation of CAL. CODE REGS., tit. 15 § 3005(d)(1),[2] as set forth in the CDC 115 Rules Violation Report Log No. F2-11-093, which he attaches an exhibit to his Complaint. (*Id.* at 46-48.)

In several cases, the Ninth Circuit has applied *Heck*'s favorable termination requirement to consider, and sometimes preclude, excessive force claims brought pursuant to 42 U.S.C. § 1983. For example, in *Cunningham*, the Ninth Circuit found § 1983 excessive force claims filed by a prisoner who was convicted of felony murder and resisting arrest were barred by *Heck* because his underlying conviction required proof of an "intentional provocative act" which was defined as "not in self defense." 312 F.3d at 1152. A finding that police had used unreasonable force while effecting the plaintiff's arrest, the Court held, would "call into question" the validity of factual disputes which had necessarily already been resolved in the criminal action against him. *Id.* at 1154. However, in *Smith v. City of Hemet*, 394 F.3d 689 (9th Cir. 2005), the Ninth Circuit considered whether excessive force allegations of a prisoner who pled guilty to resisting arrest pursuant to CAL. PENAL CODE § 148(a)(1) were also barred by *Heck* and found that "Smith's § 1983 action [wa]s not barred ... because the excessive force may have been employed against him subsequent to the time he engaged in the conduct that constituted the basis for his

---

[2] CAL. CODE REGS., tit. 15 § 3005(d)(1) provides that "[i]nmates shall not willfully commit or assist another person in the commission of an assault or battery to any person or persons, nor attempt or threaten the use of force or violence upon another person."

conviction." *Id.* at 693. Under such circumstances, the Ninth Circuit held Smith's § 1983 action "neither demonstrate[d] nor necessarily implie[d] the invalidity of his conviction." *Id.*; *see also Sanford v. Motts*, 258 F.3d 1117, 1120 (9th Cir. 2001) ("[I]f [the officer] used excessive force subsequent to the time Sanford interfered with [the officer's] duty, success in her section 1983 claim will not invalidate her conviction. *Heck* is no bar."); *cf. Hooper v. County of San Diego*, 629 F.3d 1127, 1134 (9th Cir. 2011) (holding that a conviction for resisting arrest under CAL. PENAL CODE § 148(a)(1) does not "bar a § 1983 claim for excessive force under *Heck* [if] the conviction and the § 1983 claim are based on different actions during 'one continuous transaction.'").

Here, Defendants have not shown that Plaintiff's excessive claims against them are necessarily inconsistent with his adjudication of guilt for battery on a peace officer. Thus, this Court cannot say that Plaintiff's excessive force claims "necessarily imply the invalidity" of his battery conviction under CAL. CODE REGS., tit. 15 § 3005(d)(1). *Heck*, 512 U.S. at 487. The factual context in which the force was used is disputed. Plaintiff's Complaint and its exhibits contain allegations by both him and a fellow inmate witness that he was nonresistant when Kemp and Andersen entered the office and used force against him. (Compl. at 4-5, 7, 47, 68-69.) Plaintiff's own exhibits also contain allegations by Defendants Andersen, Kemp, and Crespo which contradict Plaintiff's version of events. (*Id.* at 21, 26-27, 29, 30-11, 46-48.) Thus, while Defendant Savala, the hearing officer presiding over Plaintiff's CDC 115 hearing, considered this evidence and found it "substantiated" a charge of assault on a peace officer, (*id.* at 48), Defendants Kemp, Andersen and Crespo may still be found liable if, as Plaintiff alleges, they punched, kicked, and beat him with a baton while he lie on the floor "on [his] stomach with [his] hands behind [his] back." (Compl. at 4, 5); *Hudson v. McMillian*, 503 U.S. at 1, 7 (1992) (when an inmate claims that prison officials violated his Eighth Amendment rights by using excessive physical force, the relevant inquiry is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."); *Simpson v. Thomas*, No. 2:03-cv-0591 MCE GGH, 2009 WL 1327147 at *4 (E.D. Cal. May 12, 2009) (success on the plaintiff's Eighth Amendment excessive force claim would not necessarily

invalidate his disciplinary battery conviction because "[e]ven if Defendant acted unlawfully by using excessive force, Plaintiff could still have been guilty of battery."); *accord Gipbsin v. Kernan*, No. CIV S-07-0157 MCE EFB P, 2011 WL 533701 at *5-6 (E.D. Cal. 2011); *Gabalis v. Plainer*, No. CIV S-09-0253-CMK, 2010 WL 4880637 at *7 (E.D. Cal. 2010) ("[I]t is possible for defendants to have used excessive [force] and for plaintiff to have attempted to assault a correctional officer. Thus, success on plaintiff's civil rights claims would not necessarily imply that the guilty finding and resulting loss of good-time credits is invalid." (emphasis added)); *Candler v. Woodford*, No. C 04-5453 MMC, 2007 WL 3232435 at *7 (N.D. Cal. Nov. 1, 2007) ("[B]ecause defendants have not shown that a finding of their use of excessive force would necessarily negate an element of the battery offense, the Court cannot conclude that plaintiff's claims are barred under *Heck*."); *Grant v. Knipp*, 2012 WL 2839832 at *2 (E.D. Cal. July 9, 2012).

For these reasons, the Court DENIES Defendants' Motion to Dismiss Plaintiff's excessive force claims on grounds that they are barred by *Heck*.

**C.    Deliberate Indifference Claims Against Defendants McGee and Larocco**

Defendants McGee and Larocco also seek dismissal of Plaintiff's claims against them in "Count 1." First, Defendant McGee argues he is not alleged to have been "present for the alleged excessive force incident," and contends Plaintiff has failed to allege he acted with any deliberate indifference with regard to his medical needs. (Defs.' P&As at 4-5.) Plaintiff's only allegation as to Defendant McGee in Count 1 is that he "arrived along with Larocco" after Plaintiff was "dragged" out of the program office, that he "escorted [Plaintiff] out of the building to the holding cages," and that Plaintiff "asked [] McGee is he would please take [him] to the shower so [he] could wash off the O.C. pepper spray." (Compl. at 5.) Plaintiff admits he was permitted to rinse his eyes in a "small fountain," but claims it "didn't help." (*Id.*)

As to Defendant Larocco, Plaintiff alleges that "several hours" after the incident, Defendant Larocco escorted him to Ad-Seg. (Compl. at 6.) At that time, Plaintiff "again asked to be allowed to shower," but Larocco "wouldn't let [him]." (*Id.*)

/ / /

To the extent these allegations suggest Plaintiff seeks to hold either McGee or Larocco liable for violating his Eighth Amendment right to adequate medical treatment, the Court agrees Plaintiff has failed to allege facts sufficient to show that either of them acted with deliberate indifference to any excessive risk to his health or safety. *See Clement v. Gomez*, 298 F.3d 898, 903-04 (9th Cir. 2002) ("'Deliberate indifference' is evidenced only 'when the official knows of and disregards an excessive risk to inmate health or safety ....'") (quoting *Farmer v. Brennan*, 511 U.S. 825, 837, (1994)). While a claim of deliberate indifference may lie where prison officials are alleged to have been "aware of the harmful effects of the pepper spray," but to have "purposefully refused" to "provide showers, [or] medical care" to address any "obvious risks," *id.*, Plaintiff himself admits he was permitted to rinse his eyes in a "small fountain," immediately after he was removed from the office and before he was placed in a holding cage. (Compl. at 5.) Moreover, the CDCR 7219 Medical Report, completed by D. Dela Guerra, LVN, which Plaintiff attaches as an exhibit to his Complaint, indicates that while he was exposed to O.C. spray, he was decontaminated, and provided with "self-decontamination instructions" at 1:36 p.m., no more than 16 minutes after he was exposed. (Compl. at 5, 26, 28, 29, 34 35.) Thus, while Plaintiff claims the initial decontamination provided "didn't help," (*id.* at 5), he has failed to allege any facts to show that either Defendants McGee or Larocco "purposefully refused" to address his immediate needs, or had any reason to know that he continued to suffer symptoms hours later, and yet did nothing in response. *See Clement*, 298 F.3d at 904 (citing *Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976) (prison officials exhibit deliberate indifference by "intentionally denying or delaying access to medical care.").

Thus, the Court finds Plaintiff has failed to allege facts sufficient to show that either McGee or Larocco acted with "deliberate indifference" to any obvious risk of serious harm. *Id.*; *see also Frost v. Agnos*, 152 F.3d 1124, 1128 (9th Cir. 1998) ("mere negligence" is insufficient for Eighth Amendment liability); *Shapley v. Nevada Board. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985) (finding that "mere delay," without a showing of harm caused by the delay, "is insufficient to state a claim of deliberate indifference.").

/ / /

**D.     Due Process Claims**

Defendants Andersen, Crespo, Kemp, McGee, and Larocco further seek to dismiss Count 2 of Plaintiff's Complaint on grounds that his false disciplinary reports claims, like his excessive force claims, are barred by *Heck*, and that even if they are not, they nevertheless fail to rise to the level of a Fourteenth Amendment violation. (Defs.' P&As at 6-7.)

First, unlike his excessive force claims, it does appear, based only on the pleadings, that Plaintiff's "false" disciplinary reports claims may be barred by *Heck* insofar as he admits to have been deprived of good-time credits as a result of being found guilty of battery on a peace officer (Compl. at 7, 48), but does not further allege to have had the disciplinary conviction which was based on these reports invalidated prior to filing a civil rights suit. *Heck*, 512 U.S. at 487. In *Balisok*, 520 U.S. at 648, the Supreme Court made clear that claims for "declaratory relief and money damages, based on allegations of *deceit and bias*" related to a prison disciplinary conviction which resulted in the loss of good-time or custody credit "necessarily imply the invalidity of the punishment imposed," and thus, are "not cognizable under § 1983." *Id.* "In other words, if the plaintiff in *Edwards* proved the truth of the allegations of his complaint, there [wa]s no way that the revocation of the good-time credits could stand." *Ove v. Gwinn*, 264 F.3d 817, 823 (9th Cir. 2001).

The same is true as to Plaintiff's false and deceptive incident report claims against Defendants Andersen, Crespo, Kemp, McGee, and Larocco. In other words, if Plaintiff could show that these Defendants all fabricated their incident reports in order to deceive and mislead the hearing officers who presided over his disciplinary hearing in order to support his conviction for assault upon a peace officer in violation of CAL. CODE REGS. tit. 15 § 3005(d)(1), this would "necessarily imply the invalidity" of that conviction and the the loss of custody credit could not stand. *Balisok*, 520 U.S. at 648; *Ove*, 264 F.3d at 823. Accordingly, because Plaintiff's Complaint does not allege, nor do any of his attached exhibits show, that the disciplinary conviction which resulted from the April 1, 2011 CDC 115 Rules Violation Report, Log No. F2-11-093, was invalidated or set aside in his favor prior to filing this action, the Court finds that
/ / /

Plaintiff's due process claims as alleged in Count 2 are "not cognizable under § 1983." *Balisok*, 641 U.S. at 648.

Second, even if Plaintiff's fabricated report claims were not *Heck* barred, the Court also agrees that he has failed to state a due process claim upon which relief can be granted. While Plaintiff claims Defendants Andersen, Crespo, Kemp, McGee, and Larocco violated "due process" simply by issuing "fabricated stories" and "false allegations," to state a Fourteenth Amendment claim, he must allege more. *See Freeman v. Rideout*, 808 F.2d 949, 951 (2d Cir. 1986) (prisoners have "no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest," so long as they are "not ... deprived of a protected liberty interest without due process of law.").

"The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property." *Board of Regents v. Roth*, 408 U.S. 564, 569 (1972). State statutes and prison regulations may grant prisoners liberty interests sufficient to invoke due process protection. *Meachum v. Fano*, 427 U.S. 215, 223-27 (1976). However, the Supreme Court has significantly limited the instances in which due process can be invoked. Pursuant to *Sandin v. Conner*, 515 U.S. 472, 483 (1995), a prisoner can show a liberty interest at stake under the Due Process Clause of the Fourteenth Amendment only if he alleges a change in confinement that imposes an "atypical and significant hardship . . . in relation to the ordinary incidents of prison life." *Id.* at 484 (citations omitted); *Neal v. Shimoda*, 131 F.3d 818, 827-28 (9th Cir. 1997).

Here, Plaintiff alleges to have been "subjected to a SHU term based on false allegations and fabricated reports," and to have forfeited 61 days of behavioral credit which "increas[ed] [his] sentence." (Compl. at 7, 48.) Plaintiff's exhibits further show that he was ordered to serve a "9-month aggravated consecutive SHU term" as a result of the April 1, 2011 incident. (*Id.* at 61, CDC 128-G dated 5/27/2011.) The Court assumes the loss of credit, when coupled with a 9-month SHU term, is sufficient to show Plaintiff suffered an "atypical and significant" deprivation under *Sandin*. However, he has nevertheless failed to further allege that this deprivation occurred in the absence of the procedural safeguards which are due. *See Wolff v.*

*McDonnell*, 418 U.S. 539, 563-70 (1974); *Bd. of Regents v. Roth*, 408 U.S. 564, 569-70 (1972) ("When protected interests are implicated, the right to some kind of prior hearing is paramount.").

Specifically, when a liberty interest has been implicated as the result of a disciplinary charge, the Fourteenth Amendment requires prison officials to provide the prisoner with: (1) written notice of the charges at least 24-hours before the hearing; (2) the opportunity to appear in person at the hearing, to call witnesses, and to present rebuttal evidence; and (3) a written statement by the factfinders of the evidence relied on for their decision and the reasons for the action taken by the committee. *Wolff*, 418 U.S. at 564-66; *Neal*, 131 F.3d at 830; *Freeman*, 808 F.2d at 952 ("Although prisoners are entitled to be free from arbitrary action and conduct of prison officials, the protections against arbitrary action 'are the procedural due process requirements as set forth in *Wolff v. McDonnell*.'"). Once these protections have been provided, due process is satisfied if there is any evidence in the record that could support the conclusion reached by the officials. *Toussaint v. McCarthy*, 801 F.2d 1080, 1104-05 (1986); *see also Superintendent v. Hill*, 472 U.S. 445, 455 (1985) (even where the punishment is the loss of good time credits, the requirements of due process are satisfied if there is even "some evidence" to support the prison's disciplinary decision).

In this case, Plaintiff alleges generally that his Fourteenth Amendment rights were violated because his disciplinary conviction was based on "fabricated stories" and "false allegations." (Compl. at 7.) Plaintiff does *not* further claim to have been deprived of adequate notice of the charges against him, however, nor does he claim to have been denied an opportunity to present a defense during his May 3, 2011 CDC 115 hearing.  In fact, Plaintiff admits he was permitted to present the testimony of inmate Swan, who stated that he "got down into a prone position before staff entered the office and did not swing or kick at staff," and which directly contradicted Defendant Andersen, Crespo, Kemp, McGee and Larocco's version of the events. (*Id.* at 7, 47.) In addition, Plaintiff's exhibits include  a copy of Plaintiff's CDC 115 Rules Violation Report, Log No. F2-11-093, which shows that Plaintiff received a copy of his CDC115 on April 7, 2011, and a copy of both the Crime Incident Report, Log No. RJD-210-11-

04-0166 (CDC Form 837), and Medical Report of Injury or Unusual Occurrence (CDCR Form 7219) on April 19, 2011. (*Id.* at 46.) Plaintiff's CDC 115 hearing report further shows that Correctional Lieutenant Savala considered the testimony of several correctional official witnesses (including Defendants Crespo and Kemp), as well as inmate Swan, but concluded it "was insufficient to mitigate the reports by C/O Crespon, C/O Andersen, [and] C/O Kemp." (*Id.* at 48.)  Thus, both Plaintiff's own allegations and exhibits demonstrate that he was provided with the procedural protections guaranteed by *Wolff*, and that there was "some evidence in the record" to show him guilty of the disciplinary offense. *Hill*, 472 U.S. at 455.

For these reasons, the Court GRANTS Defendant's Motion to Dismiss the due process claims alleged in Count 2 of Plaintiff's Complaint pursuant to FED.R.CIV.P. 12(b)(6).

**E.     Conspiracy Claims**

In Count 3, Plaintiff alleges that Defendants Andersen, Crespo, Kemp, McGee, and Larocco violated his right to equal protection/access to the courts by "conspir[ing] and fabricat[ing] reports," and that this conspiracy "obstruct[s] the due course of justice" under "42 U.S.C. § 1985 et seq." (Compl. at 8.) Plaintiff claims that "it is a common practice of CDCR prison guards to escalate incidents, beat inmates, [and] then turn around and falsely accuse the inmate of crimes like battery and assault to cover up the beatings they inflict." (*Id.*) Plaintiff further alleges Defendants Savala, Luna, and Garcia "had knowledge of the conspiracies and did not do anything about it," in violation of 42 U.S.C. § 1986. (*Id.*)

Neither § 1983 nor § 1985(3) create independent substantive rights; they are procedural statutes which provide a remedy for deprivation of existing rights. *Great Am. Fed. Sav. & Loan v. Novetny*, 442 U.S. 366, 372, 376 (1979); *Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 617–618 (1979). A § 1985 claim is grounded in the Thirteenth Amendment, while a § 1983 claim is grounded in the Fourteenth Amendment. *Id.*

42 U.S.C. § 1985, otherwise known as the Ku Klux Klan Act, "is not to be construed as a general federal tort law." *Gerritssen v. Madrid Hurtado*, 819 F.2d 1511, 1518-19 (9th Cir. 1987). "To state a cause of action under § 1985(3), a complaint must allege (1) a conspiracy, (2) to deprive any person or a class of persons the equal protection of the laws, or of equal

privileges and immunities under the laws, (3) an act by one of the conspirators in furtherance of the conspiracy, and (4) a personal injury, property damage or a deprivation of any right or privilege of a citizen of the United States." *Gillespie v. Civiletti*, 629 F.2d 637, 641 (9th Cir. 1980); *see also Griffin v. Breckenridge*, 403 U.S. 88, 102-03 (1971); *Sever v. Alaska Pulp Corp.*, 978 F.2d 1529, 1536 (9th Cir. 1992). "[T]he language requiring intent to deprive *equal* protection ... means that there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." *Griffin*, 403 U.S. at 102; *Sever*, 978 F.2d at 1536.

Here, in support of his § 1985 conspiracy claims against Defendants Andersen, Crespo, Kemp, McGee, and Larocco, Plaintiff makes only summary allegations of the CDCR's "common practice" of "beat[ing] inmates" and "falsely accus[ing]" them of "crimes like battery and assault" in order to "cover up" incidents of excessive force (Compl. at 8); however, these assertions are too vague and generalized to show that any of the specific defendants Plaintiff accuses in this case agreed together to fabricate their CDCR 837 Reports of the April 1, 2011 incident in order to violate his rights. A § 1985 claim "must allege facts to support the allegation that defendants conspired together. A mere allegation of conspiracy without factual specificity is insufficient." *Karim-Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 626 (9th Cir.1988); *see also Sanchez v. City of Santa Ana,* 936 F.2d 1027, 1039 (9th Cir. 1990); *Iqbal*, 556 U.S. at 679 ("[W]hile legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."). Moreover, there are no allegations in Plaintiff's Complaint to show or even suggest that Defendants Andersen, Crespo, Kemp, McGee, or Larocco discriminated against him because of "some racial, or perhaps otherwise class-based" animus, or because he is a member of a protected class. *Griffin*, 403 U.S. at 102; *see also Sever*, 978 F.2d at 1536.

Finally, "[s]ection 1986 authorizes a remedy against state actors who have negligently failed to prevent a conspiracy that would be actionable under § 1985." *Cerrato v. San Francisco Comm. College Dist.*, 26 F.3d 968, 971 n.7 (9th Cir. 1994). "A claim can be stated under [§] 1986 only if the complaint contains a valid claim under [§] 1985." *Karim-Panahi*, 839 F.2d at

626; *Trerice v. Pedersen*, 769 F.2d 1398, 1403 (9th Cir. 1985) ( a claim under 42 U.S.C. § 1986 is necessarily contingent upon a valid § 1985 claim) ; *McCalden v. California Library Ass'n*, 955 F.2d 1214, 1223 (9th Cir. 1990) (to state a claim under § 1986 for neglect or refusal to prevent a § 1985 conspiracy, there must be a valid claim under § 1985). Thus, because Plaintiff has failed to state a claim against Defendants Andersen, Crespo, Kemp, McGee, and Larocco under § 1985, his claims against Defendants Savala, Luna, and Garcia under § 1986 also fail to state a claim upon which relief can be granted.

For these reasons, the Court GRANTS Defendants' Motion to Dismiss the conspiracy claims alleged pursuant to 42 U.S.C. § 1985 and 1986 in Count 3 of Plaintiff's Complaint pursuant to FED.R.CIV.P. 12(b)(6).

### III. Conclusion and Order

For all the reasons stated in this Order, the Court hereby:

(1) **DENIES** Defendants' Motion to Dismiss Plaintiff's excessive force claims against Defendants Kemp, Andersen and Crespo as alleged in Count 1 pursuant to FED.R.CIV.P. 12(b)(6);

(2) **GRANTS** Defendants' Motion to Dismiss Plaintiff's Eighth Amendment inadequate medical treatment claims against Defendants McGee and Larocco as alleged in Count 1 for failing to state a claim pursuant to FED.R.CIV.P. 12(b)(6);

(3) **GRANTS** Defendants' Motion to Dismiss Plaintiff's due process claims as alleged in Count 2 pursuant to FED.R.CIV.P. 12(b)(6); and

(4) **GRANTS** Defendants' Motion to Dismiss Plaintiff's conspiracy claims pursuant to 42 U.S.C. § 1985 and § 1986 as alleged in Count 3 pursuant to FED.R.CIV.P. 12(b)(6).

(5) Plaintiff is further **GRANTED** forty-five (45) days leave from the date this Order is filed to either: a) file with the Court and serve upon Defendants an Amended Complaint which addresses all the deficiencies of pleading noted in this Order; or b) file and serve a "Notice of Intention to Proceed with his Original Complaint" as to the Eighth Amendment claims currently alleged in Count 1 against Defendants Kemp, Andersen, and Crespo only.

/ / /

Plaintiff is cautioned that should he elect to amend, his Amended Complaint must be complete in itself, that it will supersede his original Complaint, and that any claim not re-alleged against any Defendant previously named will be considered waived. *See* S.D. CAL. CIVLR 15.1; *King v. Atiyeh*, 814 F.2d 565, 567 (9th Cir. 1987).

If Plaintiff elects *not* to amend, and instead files a "Notice of Intention to Proceed with his Original Complaint," the Court shall direct Defendants Kemp, Andersen, and Crespo to file an Answer to Plaintiff's Complaint [ECF Doc. No. 1] within the time provided by FED. R. CIV. P. 12(a)(4)(A).

**IT IS SO ORDERED.**

DATED: March 12, 2013

_____
BARRY TED MOSKOWITZ, Chief Judge
United States District Court